May it please the Court. My name is Neil Epstein. I represent the estate of James Kelly and Shamrock Partners. I'm accompanied by my partner, Carol Press, and by Co-Counsel David Shaw. The principal issue on this appeal is whether the district court erred in precluding Mr. Kahn from asserting a tort claim against my clients under the Pennsylvania gist of the action doctrine. That is the primary issue. Did you say precluding Mr. Kahn? They allowed him to put it in. Excuse me. Mr. Kahn was a plaintiff. You mean should have put it? Should have. Oh, yeah. And when exactly did you ask the district court to do this? Well, sir, Your Honor, it was in the pretrial order. It wasn't stated as gist of the action. Gist of the action is a name that's used in Pennsylvania. Yes, we did it in the pretrial order. You understand my question. When did your client, when did you on behalf of your client ask the district court to preclude? To preclude the conversion claim? The thing that you said the court should have done, when did you ask the district court to do that thing? What is the document and time and place in the record where you first asked the district court to do this? Well, we asked the court to do it in a motion to dismiss, the initial motion to dismiss the conversion count, where we took the position, or position was taken that this was a cause of action in contract, not in court. It was done there. And you cited this Pennsylvania rule that you are now relying on? No, we, it's not. Well, let me specifically ask the question. Let me listen to it one more time. When did you first ask the court to do this, relying on the Pennsylvania rule? In our Rule 15 motion. Too late. Okay, anything else? Well, we had raised it before. Too late. By that time, the jury's come back. When did you ask the district court to do it prior to having the jury instructed? Every time we took the position that this – Cited the Pennsylvania rule? We didn't cite the Pennsylvania rule by name. We cited the Pennsylvania rule by principle, that this is a contract action. You're precluded from bringing a conversion count against our clients. Is your claim, is your answer to my question, never? No, it's not, Your Honor. So before the jury went out, you relied on this rule and cited the Pennsylvania case law in asking the district court to preclude the plaintiff from raising this theory. Your Honor – There is a place you can point to me in the record. It was raised in the Rule 15 motion, and the district court deemed the Rule 15 motion and the brief in support of the motion to be filed in a timely manner. That being before the – I understand, but you understand my question. No, I do understand. Do you understand my question? It was presented – Do you understand my question? Yes. Okay. Then answer it. In the Rule 15 motion. Okay. My question says prior to when the jury was instructed, okay? Now, let me ask you this. Was the Rule 15 motion before the jury was instructed or after the jury was instructed? It was deemed filed by the district judge. Did you hear my question? I did, Your Honor. Okay. Was the Rule 15 motion before the jury was instructed or after the jury was instructed? If you're asking me when it was physically filed, it was physically filed after the jury – So any answers that includes the Rule 15 motion is not going to be responsive to my question, okay? Limiting yourself only to things that chronologically happened before the jury was instructed, was there any time in which you, on behalf of your client, asked the court to preclude plaintiff from raising this theory, citing the Pennsylvania case law on this point? Not that I'm aware of. Very poor situation you're in. Your Honor, I would disagree. Well, why would this not be simple waiver? The district judge does not – you don't cite the law to the district judge. You don't provide the authority. You're relying on Pennsylvania law. Why isn't this waived? Because we were ready to do it on a Rule 15 motion. Well, but by that time the jury's gone. Excuse me. By that time the jury's gone, why isn't it waived for failure to give the district judge the law to instruct the jury? Why would you have these useless exercises where we have the case tried under the theory that you don't like, and then if you don't like the result, you then pull out new law and say, oh, no, let's give us another chance. I mean, we don't do it that way. Maybe in Pennsylvania they do it that way, but I don't think so. We don't do it that way in Pennsylvania either, Judge. But we do follow what a district judge – I didn't think so. I'd call Justice Sareka and talk to him about it if I saw they did that. Well, Your Honor, we do follow the directions of a district court at trial. And if a district court says to us, your Rule 15 motion need not be filed today. It can be filed next week with your brief. I will deem it filed today. But because – When was this? This was the last day of trial, when the judge deemed the Rule 15 motion to be timely filed. That's in the record. Before the jury retired? Correct. Let me ask you this. I mean, it was before the jury – if I'm not mistaken, it was before the jury was charged. I mean, not only retired or not only came in with a verdict. That was before. It was the end of the evidence. But before the jury instructions were given? Yes. Yes, Your Honor. And did you – Where the court said it was – Where is that show in the record? I'm sorry. I missed that. It would be on the June 30th transcript of the trial. Did you object to the instructions? Did you – raising this theory of the Pennsylvania law, did you say, look, these instructions are improper? Or we ask the court to give instructions on the Pennsylvania law to the jury? Is that anywhere in the record? That's an issue that doesn't go to the jury, Your Honor. Under Pennsylvania law, as decided by the Third Circuit, by every district court that's had that issue before, it's a matter of law. Yeah, but you have to object under Rule 51 to the giving of an instruction. I think that was what the question was. Zero in on this, Mr. Epstein. Under Rule 51, Federal Rules of Procedure, is there an objection to the court on the plaintiff's tendered instruction allowing the jury to find conversion? No, because there was no error in that instructing – instruction regarding the elements of a conversion count. Well, but under gist of the action, you should have said, I would imagine, under gist of the action, you should have said, look, Your Honor, all duties come out of a contract. There should not be any instruction given on conversion because of the Pennsylvania law regarding gist of the action. Was any such objection made in the settlement of instructions conference before the jury were instructed? No, Your Honor. No. It was made in the Rule 50 motion, which is where it probably should have been made. Once it's made in the Rule 50 motion under the law, the circuit – Well, you know, that's the kind of thing that you don't have to object to before you go to trial, before they start putting on evidence, before – before you have to roll in witnesses. I mean, it turns out the whole – the whole theory is one you object to. Why have all these witnesses? I'll tell you why, Your Honor. Why have the jury sit down listening to evidence that you think is subjectionably irrelevant?  It's a situation where the judge has determined that he can't or she cannot resolve the issue of whether to apply the doctrine under the facts of that case and needs the evidence for the judge, not the jury, to decide whether gist of the action is applied as a matter of law. It would have been far more plausible if you had cited this to the court and the court had said, wait, okay, you're right, I can't really decide this. These cases require me to listen to evidence. But you guys never cited this evidence. The district court was not aware that this was an issue to listen for because this was never raised. Your Honor – And worse, not only was it not raised, but you seemed to cite the exact opposite ruling by citing Siemens Direct versus Standard Oil. You say the principles of Siemens Direct versus Standard Oil apply in this case. That was in your pretrial statement. Now, we all know Siemens Direct versus Standard Oil. And one of my colleagues has written extensively on that theory. And not with complimentary evidence. Exactly. And so I was absolutely surprised in seeing you take the position in gist of the action that the trial court should follow Siemens because Siemens was directly contrary to exactly the idea that you're putting forward, which is that you should not have a tort recovery for a breach of contract. The holdings of Siemens is contrary. No, the holdings of Siemens is correct because they reversed the judgment and remanded for determination whether the denial of the existence of the contract were in bad faith or not. But the underlying principles are, in a typical situation, you do not allow a contract case to become a tort case. That's exactly what Siemens allowed. Because Siemens was in an insurance policy situation. And they carved that out as an exception. That's what they did. I mean, if you cited Freeman & Mills versus the oil company, I would have said you raised the question because it overruled Siemens. Right. And we know that, Your Honor.  I'm trying to explain. The principle of Siemens, the principle is you can't bring a tort action when you have a breach of contract, specifically a breach of the implied obligation of good faith. That's the general rule. That's what Siemens said. But here, here, we're dealing with an insurance policy. And we'll make an exception to that general rule and say when you're dealing with an insurance policy, where'd you get that? I mean, you know, standard oil does a lot of things, but it doesn't insure. The court in Siemens held that the implied obligation of good faith cannot give rise to a breach to a tort claim. Exactly wrong. That's exactly what Freeman & Mills said in overruling Siemens. But that's exactly opposite of what Siemens held. You cited exactly the wrong case. I don't know if you were the trial attorney. But whoever was the trial attorney cited exactly the wrong principle. So I'd suggest you go to the next point. Well, can I address this for one more minute, Your Honor? Sure. I was not trial counsel. But the meaning of addressing Siemens in this case could only have one reason. We knew we were not dealing with an implied or a duty of an implied obligation. It was referred to as the underlying principles. May I get a glass of water, please? Your Honors, that was referred to, the principles of Siemens. And I can understand why trial counsel did that. Because when I read Siemens and then read Freeman, I understood what trial counsel was referring to. But clearly the district court knew it, because when the district court ruled on the Rule 50 motion, she did not say, this has been waived. She did not say, this is a surprise. Nor did counsel from Mr. Kahn. There was never an issue that this was not raised previously, that this ambushed anyone, that there was any surprise whatsoever. The judge treated our Rule 50 motion with respect to the gist of the action on the merits. And she devoted a whole footnote to it. Well, she devoted a whole footnote, and she devoted that footnote incorrectly, Your Honor. She misapplied gist of the action. And there is absolutely no question about that, in my opinion, under Pennsylvania law. But she addressed the merits. Well, maybe she would have done better if she had cited Pennsylvania law. We cited it in the Rule 50 motion. We gave her the relevant cases. They were all before her. The argument was made. The judge had that in her hands. She did. She misapplied the doctrine. And the brief and the motion was deemed filed, I think it was June 30th. It was the last day of trial where evidence went to the jury. Have you found that excerpt of record citation? Excerpt 627. This is tab 627? Tab 627, page 12. I will at this moment deem both sides to have kindly made their rules. Is my tab 627? Yes. Transcript of the proceedings on, I was wrong, July 1st, 1930. Oh, you're looking at the page at the top. Which line are you looking at? The bottom where it says the court. It's lines 23 and 24 stated expressly. As I understand it, I was not there, Your Honor, but as I understand it, there was terrible pressure to get the case charged to the jury and get the jury deliberating. I don't know all the reasons, but it comes out in reading the transcript pretty clearly. Nobody objected. That was the procedure that was laid down by the district judge. When she did get the Rule 50 motions, even though I agree with you, Your Honor, it was afterwards. But that's why I used the word deemed. She deemed them filed in a timely manner. Counsel relied on that. Counsel could have made the same arguments that he made a week or 10 days, whatever it was later. But this is the way the court wanted it, and it was done. And it was presented in a highly detailed and professional manner, the Rule 50 motion with respect to just the action. There was never, this issue was not raised at the time of the pre-trial conference. Well, not in terms of just of the action, but the referral to Siemens and other aspects of the pre-trial. I know you're Help me out then. Why isn't that, if you think this is a part of the plaintiff's case that you should not have been able to present, why isn't this something that you had to raise by way of summary judgment, or at the latest, at the time of the pre-trial conference? It was made in a motion to dismiss the conversion count, and I think the first Side of Pennsylvania at all? No, it wasn't. It was just saying this is not a court action, this is a contract action. I think the contract here, the clearing agreement, clearly and unequivocally states that But you didn't use the just of the action language or the No, we didn't use the term just of the action Outside of the Pennsylvania cases? No, but just of the action in Pennsylvania is called that. It exists in virtually every other state in the country, including California. As I re-frame it, it's not a unique doctrine. It's an unusual name. We sometimes have unusual names for doctrines. Just of the action. I learned it as gravamen. What's the gravamen of the case? This became just of the action. It's in virtually every Pennsylvania case you want to read on this issue. It's a name, only a name. It's the same as the doctrine in California. You can't convert I'm sorry. I guess you're wrong. 22 seconds. Do you want to save him? Excuse me? Do you want to save your time for a bottle? Yes. Thank you. You may have him by his side. May it please the Court. Sayeed Khashoggi, I was the trial counsel for Mr. Kahn. Did you comply with our order, Mr. Khashoggi? I'm sorry, Your Honor? Did you comply with our order? Yes, Your Honor. I filed a proof of service. I served the appropriate papers. I didn't see it on the docket sheet this morning, but you did file it in time. Yes, Your Honor. I sent it in with and I sent in a corrected brief. I served my client who was in the courtroom. It's fine. I just want to make sure because it was not, didn't make it on the docket sheet. All right. You may proceed. Don't waste any time on me. All right. Your Honor, first of all, this, the conversion count was part of the agreed jury instruction. That's docket number cited in our papers. Docket number, I'm sorry to bring it up with me, but it's part of the agreed jury instructions which went to the jury. Conversion was there. They agreed to it. Well, Mr. Epstein's argument is, and I'm just going to repeat it just so you have a chance to respond to this, is we didn't disagree that these were correct instructions as to conversion. What we disagreed about is that the jury shouldn't have gotten the case on conversion at all. So he says by agreeing to the instructions, all we're saying is we don't have any objection to the way the jury is instructed to consider conversion. That's a plausible argument. Look, we don't think they should get this, but if they do get it, we think these are the proper instructions. But then it has to be in a pretrial order. As Mr. Epstein just stated, there are factual issues with this gist of the action, doctrine, theory, whatever they want to call it. First they called it a doctrine. Now it's a theory. I don't know what it means. What do you make of the reference in the pretrial order by the defendant to the Siemens direct by name and by citation? Well, that leads me in the opposite direction of their gist of the action. That does not lead me in the direction that they want to go, and it did not lead the court in the direction that they now want to go. This is an issue that was not raised, not preserved in the pretrial order. I mean, it's really shooting yourself in the foot to cite Siemens for the proposition that a breach of contract should not be a tort. Exactly. It's just the opposite. It is their citation of Siemens is consistent with the agreed jury instruction. It's consistent with how we tried the case. It's consistent with everything that was done until they got to the Rule 50 motion, which, by the way, was after the jury was charged, which I'm looking at the transcript, number 627, if you'll notice. This part of the transcript was in the afternoon. It's the next page. It closed at 3.45 p.m. If memory serves, and they have not cited the paperwork, but if memory serves, the jury was charged that morning, Friday morning, and retired, and the Rule 50 motion issue was discussed after the jury had retired. In fact, maybe even after they came back. This is not my recollection, but if memory serves, I don't think it matters whether they bring the motion before the jury is charged or after the jury is charged. The critical issue is by leaving it out of the pretrial order, we are precluded. We are sandbagged, essentially, because we, as plaintiffs, are precluded from addressing the issue factually and also offering factual counters, which exist even under Pennsylvania law, which are cited in our brief. All of this was we were deprived, and this is the issue presented in the case file we cited. What about the position that they take, if I understand it correctly, says, look, we raised it, but we have a motion to dismiss, so we lost that. We, you know, had to accept that ruling for the rest of the litigation, and so we didn't object to it again, but we made our position known at the time of the motion to dismiss. What's wrong with that argument? Well, first of all, the actual motion to dismiss is not based on any doctrine that they're citing now. It certainly mentions no Pennsylvania law. The basic issue really was saying that, first of all, the motion to dismiss was brought by the individual, and the essential motion was saying that, as an individual, he's not responsible for the tort, since he's an executive of the corporation. If you actually look at the motion, it doesn't cite any Pennsylvania law. It doesn't cite any of these issues. But even more so, more importantly, is the pretrial order. As this court held in Brooklyn, reference to issues prior to the pretrial order, whether they be in pleadings, motions, whatever, are irrelevant if they are not included in the pretrial order. The pretrial order is a road map for the case. It tells me, as a trial attorney, what I must meet, what evidence I need to provide, what evidence I need to address. And without that reference in the pretrial order, bringing it up afterwards is an ambush, as was stated in the Monell case and other cases. So what your position might be is that, by citing Siemens Direct versus Standard Oil, the only issue that the defendant was trying to make was that it had to be a bad-faith denial of the existence of a contract, not a good-faith denial. And so the issue was on the tort, whether it was in bad faith or in good faith. Exactly. And even that issue would be subsumed in the jury instructions as to the manner, what is the elements required for the tort, which they did stipulate to. Siemens goes to the elements of the tort, and they stipulate it to the agreed jury instructions. We cite in the papers, at one point, the trial court asked them, what are your defenses to conversion? And there was no reference to Siemens or gist of the action or anything like that. They simply said, well, we had, I think they said, I don't recall exactly what they said, something like waiver or something. It's cited in our brief. The point is, they did not, at that specific point, when they had the opportunity during the trial to say, these are our counters, these are our defenses to conversion, they did not raise gist of the action. They did not raise anything close to that. They did not mention it in any way. Once again, we were deprived of the opportunity to respond. And there are factual responses to this issue, even under Pennsylvania law, which we have addressed in the papers. Now, is it true that the conversion instructions did not mention the prior ruling that Shamrock had breached the contract? Not at all. There was nothing? Absolutely not. And no objection? Well, it was an agreed instruction. Not only no objection, it was an agreed instruction. There was, but even under the agreed instruction, there was no suggestion there that the breach results in conversion. The court, the instructions required the jury to independently find each element of conversion as laid out by the instructions. That's why this factual contention of theirs that the only basis for the jury is the contract does not find support in the instructions, that they agreed to. I mean, the conversion was part of the agreed instructions. The elements were there. The jury was not prevented to infer, oh, because there's a contract, there's automatically a conversion. And even if they were, it was part of the agreed instructions. So they cannot know. One question keeps coming into my mind when you talk about conversion. Conversion is the taking of a chattel from the possession or constructive possession of the plaintiff. These warrants were never in the possession of your client. Nor were they in the constructive possession because there was no fiduciary relationship or other special relationship which obligated Shamrock to hold the warrants for the benefit of your client. They owed the warrants to him. They owed the warrants to him in the same way that any obligor owes an obligation under contract. How could the – maybe this issue was not raised, but how could there be conversion over a chattel which was not in the possession of your client? Your Honor, may I get a paper from my desk? Sure. The standard in Pennsylvania which was cited and is in the agreed instructions is that the requirement for possession is the deprivation of another's right of property in or use or right to possession of a thing or other interference therewith, meaning they can take the warrants or interfere. And the requirement on my client's part is that he has a right of property in it or right of use or right to possession. But he has no more right to possession of those warrants than any obligee under any contract for a chattel. Well, two responses. First, under the agreed instructions, one element was Mr. Kahn had a right to immediate possession of the warrants. And the jury found that in favor of the plaintiff. But how could they find that if – what's the evidence that shows that he had the immediate possession of warrants other than the obligation mentioned in the contract? There were also evidence of several letters, instructions given post-contract by Mr. Kelly to the warrant issuer to issue 90 percent of the warrants to Mr. Kahn. But I would point out, Your Honor, even if we take what you say and say that the only basis for the possession of the warrants was the contract, there is ample case law from Pennsylvania which holds that where there is a contract between the parties to divide funds, property, chattel, whatever. You're talking about the case involving the attorneys Barnhart. That was specifically decided upon the rules of professional conduct. And it was in the settlement of a – it was settlement proceeds and the recognition of a property right in both attorneys in the settlement proceeds based on the rules of professional conduct. There wasn't a mention of just of the action. There wasn't any mention of Siemens or anything else. Well, Your Honor, if I could cite two other authorities. I was actually thinking of two other cases. Berger and Montague, which is cited in the paper, is another attorney case. Are those in your brief? Yes.  Berger and Montague. Did not involve the professional rules. The court held that the professional rules were not applicable here. Solely an agreement between the attorneys to split the fee when it came in. And the court said that. But it's against an attorney fee situation. Yes. Now, the attorneys don't have any right, a contractual right, against the defendant to get paid. We all understand that.  As a result of the payment of that settlement and when it is made, then the attorneys have a lien, an attorney's lien, in the proceeds pursuant to their agreement with the plaintiff. But that's not this case. Your Honor, let me cite a case that was – I brought to the attention of the court was decided less than three weeks ago. This is a case of Centimark v. Pignato and Pignato Rufino. Is this in your 28-J letter? Yes, the second one. Because I only became aware of this case last week. It was decided Pennsylvania District Court, May 6, 2008. It is in our second Rule 28-J letter because I became aware of it. I could have written this opinion myself. It is exactly on point of what we were discussing. There was a contract between a company called Centimark that I guess had access to customers for roofing and a roofing company. Simple contract, no attorneys, no fee split, no lien. The contract provided that when money came – the contract provided that the roofing company, the roofer, would go repair roofs and collect the money from the customers. And the contract further provided that when the money came in, it would be split and the roofer would remit a portion to the company that had the relationship with the customers, this company Centimark. Pure contract, no attorney fees, no liens, no other public policy considerations. The court held that this gave rise to a conversion and was actionable, notwithstanding the gist of the action doctrine. And I can quote, under the terms of the alliance, that's what they called the contract, once a customer paid Pagnotto, the roofer, for roofing services, a portion of the proceeds remitted belonged to Centimark. Pagnotto's subsequent failure to pay Centimark the specified amount due is akin to the attorney's failure to pay the contractually agreed percentage of settlement proceeds in Bernhardt, the consignment due in Schoenberger, another case we cite in our papers, and the royalty payments discussed in Levert, which is yet another case we cited, and can rightly be considered a conversion of those funds. The sole basis of the conversion was a contract which gave rise to the contractual, purely contractual – That's a Federal court? Federal district court. But, Your Honor, I would point out that there is no – the Supreme Court of Pennsylvania has never adopted this doctrine, so we have nothing but district courts and lower courts and so forth. Okay. And I would add further that the – that same court held that the gist of the action doctrine does not apply as a defense to the executives of the company because they are not parties to the contract. As I said, I couldn't have written a better position. I couldn't have written a better opinion myself. You've also crossed the field on the alter ego question. You wish to have judgment against Kelley, and the Court refused to do that on the Rule 50 motions. Why do you think the Court was in violation of our rules on scope of review on that? Well, Your Honor, the alter ego is an issue that I'll submit on the papers. I would like to be clear. All right. Then don't take any of your time. Gotcha. I would, however, like to be heard more at length on the issue of unjust enrichment. The jury found separately an award for unjust enrichment, finding that Kelley had been unjustly enriched by use of the warrants. The jury found that separately. Contrary to the – to the reply brief, the actual jury instructions make clear that we're talking about two different items of damages. The unjust enrichment was what is the profit that Mr. Kelley derived from the use of these warrants, or what is the loss he avoided. And the jury found a certain number. The trial court found that was not duplicative, but the trial court declined to enter judgment on that additional jury finding for a very specific legal reason. The trial court held – believed that under applicable law, unjust enrichment only applied when there was a contract between the parties. That's what the trial court cited in its Rule 50 ruling. Now, what – No, unjust enrichment doesn't apply because it's a remedy in a quasi-contract where there is a contract. You can't have both a contract and a quasi-contract. Exactly. But the trial court stated that unjust enrichment is opportunistic breach of the contract. And that is what we feel is incorrect. That's what the papers recited, that in fact unjust enrichment applies when there is no contract. And that is the situation we have here. So your ultimate position is affirm the conversion judgment and punitive damages as to at least Shamrock. Well, no, also Kelley. And Alter Ego and also Kelley. Well, our position is that the judgment should be affirmed. And you want unjust enrichment. So you're talking about 1.9, 2, 2, that's 5.9, plus 1.9 for unjust enrichment. Yes. 7.8, right? Well, it adds up to a little under 6 million against Kelley. And then – oh, well, if the Alter Ego is added, then he would be responsible for that. But on that, again, we submit on the papers. The unjust enrichment, Your Honor, goes to a claim for relief we had in the complaint, which is the imposition of a constructive trust. The analogy we draw is that a trustee takes money out of a fund, uses the – Well, how can you have unjust enrichment if he pays for the breach of contract, that he's no longer unjustly enriched? Well, the – Or enriched at all. He's impoverished. Well, there are two aspects to it. There is the value of the warrants to Mr. Kahn, of which Mr. Kahn was deprived. There is also the profit that Mr. Kelley obtained. And isn't it the same money? If Mr. Kelley hadn't gotten the profit, it would have gone to Mr. Kahn? Let me draw an analogy. Mr. Kelley – Well, why don't you answer my question? Sure. Mr. Kelley used the warrants to cover his short-trading scheme, his improper short-trading scheme. So the profit he made on the warrants is not related to what Mr. Kahn would have made. That's why the numbers that the jury came up with are different. I don't understand what you're saying. Well, I'm trying to draw an analogy to a trustee. No, why don't you answer my question? Yeah. I just didn't understand your answer. Okay. I heard what you said, but I didn't understand what it meant. I mean, the cover, the way he covers, you get money for it and then use the money to cover your other debts. He still gets money from the warrants. Well, he didn't sell the warrants and use money to cover his other debts. He used the warrants, the actual warrants, to cover his short-trading scheme. He had been, Mr. Kelley, contrary to his agreement with the issuer, and apparently this is a no-no under the securities rules as well, Mr. Kelley was shorting the stock before he was going to exercise the warrants. And the shorting didn't work out for him because the stock actually rose. So he needed warrants to get shares to cover his short position. That's what he used the warrants for. Collaborative? No, he actually exercised the warrants, took the shares, and used the shares to cover his short position. That's specifically what he did. And the profit he made on that, or the loss he avoided, is his unjust enrichment. But other than coincidentally, that exercise, that transaction, is not related to the value of the warrants in Mr. Kahn's hands because the value of the warrants in Mr. Kahn's hands is the value of the warrants on a given day. He'd get the shares. He'd pay to get the shares. Then he'd sell them in the market and make his profit. That's the value to Mr. Kahn. That's the conversion. That's what Mr. Kahn lost. But what Mr. Kahn lost is different from what Mr. Kelley gained. He was enriched by the use of the warrants to cover his short-selling transaction, and that is the unjust enrichment, the additional remedy that we're asking for. And, again, that required the jury found it based on instructions. The jury found the amount that put it there. It's just a minor technical issue that the Court did not enter additional judgment on that matter, which I think Your Honor pointed out, that the Court felt unjust enrichment is not available if there are unless there's a contract when it's just the opposite. And we're saying there's no contract, so there should be unjust enrichment. Thank you. Thank you, Your Honor. You've got 16 seconds. We'll round it up to a minute. Your Honor, with respect to this new case that was raised in the Rule 28J letter, that is a magistrate judge who did not cite the myriad of cases to the contrary that that magistrate decided. I mean, to call it a significant opinion and to address that opinion, to Your Honor's, is most surprising to me. That Court, that magistrate, refuses to do that. Rather than arguing with its reasoning or distinguishing it. Basically, you want us to disregard it because apparently it's just not all that. Well, disregard because it doesn't address the myriad of cases to the contrary, Your Honor. I mean, I apologize with respect to my presentation. I've seen this. I got confused, and I really do express my apologies. But with respect to this case, CentiMark, I mean, that case refuses to recognize that there are Third Circuit opinions, district court opinions, to the contrary. It's not under just the action. It's not that there is a specified piece of property, be it from a third party or anyone else. It's where did the property interests arise, and where do the duties arise. If they arise under a contract, you're relegated to a breach of contract claim. If they arise, as Your Honor said, under the Code of Professional Responsibility or under some public policy, then you may bring the tort action. That's just the action. And as I understand it, that's also true in California and in other States. It's not unique. The name is unique. In terms of the pretrial order, Your Honor, we mentioned Siemens, but we also mentioned race due to conduct, referring back to the Court's decision on the summary judgment on the breach of contract. We mentioned judicial estoppel, saying in your motion for summary judgment on the contract, you say that all your rights arise out of the contract. How can you be bringing a tort against us? That's in the pretrial order itself. There are other aspects of the pretrial order under our affirmative defenses which all go to the same point. You have brought a breach of contract against us. You have tagged on to that a tort claim. It's not proper, either under Pennsylvania law or the law of most jurisdictions that I know. That's in the pretrial order, and that's why the judge, even though she addressed it in the footnote, and I can't explain why, that's why the judge never mentioned this wasn't raised before, nor did Mr. Kashani when he responded to the Rule 15 motion on the merits. He relied on the two attorney cases, and that apparently convinced the district court, but that's wrong as a matter of law. But it was raised. It was raised in the pretrial order. It was raised throughout the case from day one when they moved to dismiss. You're way over your time. Thank you. Thank you.
judges: Kozinski, D.W. Nelson, Bea